## CAROLINA NATIONAL BANK v. STATE OF SOUTH CAROLINA.

1. SUPERINTENDENT OF PENITENTIARY has power to receive money for convict hire.

2. NOTES AND BILLS—INDORSEMENT—POWERS—STATE'S CREDIT—CONSTITUTION.—SUPERINTENDENT OF THE PENITENTIARY has no authority to indorse notes taken by him as such for convict hire, discounting same and placing to credit of State, and thus pledge the credit of the State, in absence of statute so authorizing, and if there were such statute, it would be violative of art. X., sec. 7, Con. of 1895.

3. PRACTICE—USAGE.—ACQUIESCENCE in such usage or practice could only be shown by act or joint resolution of the General Assembly.

4. ESTOPPEL—POWER.—Unauthorized act by superintendent of penitentiary in indorsing note as such and placing proceeds to credit of State, will not estop the State from showing that he had no power to so act.

5. MONEY HAD AND RECEIVED.—State cannot be held liable as for moneys had and received for money placed to its credit by indorsement and discount of note by its officer without authority.

Before KLUGH, J., Richland, July, 1900.   Reversed.

Action by Carolina National Bank of Columbia against State of South Carolina, on the following complaint:

"The plaintiff above named, complaining of the defendant herein, and bringing this action under and by virtue of a joint resolution of the General Assembly of the State of South Carolina, entitled 'A joint resolution to authorize the Carolina National Bank of Columbia to sue the State of South Carolina for the recovery of money claimed by the said bank to be due it from the State,' approved February 17, 1900, alleges:

30—60

"(1) That the plaintiff is, and at the times hereinafter mentioned was, a corporation duly created and existing by and under the laws of the United States of America.

"(2) That during the year 1898, and for many years prior thereto, the account of the State penitentiary was kept in the name of its superintendent at the bank of the plaintiff, all moneys received by the said penitentiary being deposited to the credit of said account in said bank, and all payments made by the said penitentiary being made by check on said bank and against said account.

"(3) That during the year 1898, and for many years prior thereto, it was the usage and practice of the superintendent of the said State penitentiary to raise money for the purpose of carrying on its operations by discounting at said bank, or other banks, notes taken in the name of the superintendent from persons for convict hire, or for the price of articles sold, payable at some future date. That such usage and practice was well known to and approved by the board of directors of the said State penitentiary, and was well known to the defendant, and acquiesced in and approved of by the defendant.

"(4) That all such notes were made payable to the said superintendent as such, for and on behalf of the defendant, and when discounted as aforesaid, were indorsed by the superintendent as such for and on behalf of the defendant, and when not paid at maturity by the makers thereof were taken up and paid by the superintendent of said State penitentiary for and on behalf of the defendant, all of which was with the knowledge, acquiescence and approval of the said board of directors and of the defendant; and that all such notes were of the same tenor, except as to amount, dates and names of makers as the two notes hereinafter set forth, and the indorsements thereof being the same as the indorsements of the two notes hereinafter set forth.

"(5) That on July 8th, 1898, W. A. Neal, then being the superintendent of the said State penitentiary, brought to the plaintiff bank a note, of which the following is a copy: '$600.

Columbia, S. C., July 8th, 1898. Six months after date I promise to pay to the order of W. A. Neal, superintendent, six hundred dollars, value received. Payable at the Carolina National Bank of Columbia, S. C. With interest after maturity at the rate of eight per centum per annum. W. W. Russell.' That said note was indorsed 'W. A. Neal, superintendent S. C. P.' And that he, the said W. A. Neal, superintendent, requested the plaintiff bank to discount the said note for the accommodation of the said State penitentiary. And that it was well understood between the plaintiff and the said W. A. Neal, superintendent, that the said note had been executed to him as superintendent for and on behalf of the defendant, and that he had indorsed the same for and on behalf of the defendant. And that the discount of the said note was asked upon the faith of the indorsement thereon as being the indorsement of the defendant by its officer and agent, the said W. A. Neal, superintendent. That pursuant to said request, and upon the faith and security of the said indorsement as being the indorsement of the defendant, the said note was discounted by the plaintiff bank, and the face value of same was placed to the credit of the said penitentiary account, the said W. A. Neal, superintendent, paying the discount of same.

"(6) That again on the 21st day of July, 1898, the said W. A. Neal, still being the superintendent of the State penitentiary, brought to the plaintiff bank another note, of which the following is a copy: '$2,000. Columbia, S. C., July 21st, 1898. Five months after date I promise to pay to the order of W. A. Neal, superintendent, two thousand dollars, value received. Payable at the Carolina National Bank of Columbia, S. C. With interest after maturity at the rate of eight per centum per annum. C. W. Ragsdale.' That said note was indorsed 'W. A. Neal, superintendent S. C. penitentiary.' And that he, the said W. A. Neal, superintendent, requested the plaintiff bank to discount the said note for the accommodation of the said State penitentiary. And it was well understood between the plaintiff and the said W. A.

Neal, superintendent, that the said note had been executed
to him as superintendent for and on behalf of the defendant,
and that he had indorsed the same for and on behalf of the
defendant.    And that the discount of said note was asked
upon the faith of the indorsement thereon as being the in-
dorsement of the defendant by its officer and agent, the said
W. A. Neal, superintendent.    That pursuant to said request
and upon the faith and securty of the said indorsement as
being the indorsement of the defendant, the said note was
discounted by the plaintiff bank, and the net proceeds
thereof, $1,931.60, placed to the credit of the said penitenti-
ary account, the sum of $68.40 being the discount on said
note.

"(7) That at maturity, each of said notes was duly pre-
sented for payment, but was not paid, of all which due notice
was given to W .A. Neal, superintendent, for and on behalf
of the defendant.

"(8) That each of the said notes discounted by the plain-
tiff bank as aforesaid, as the plaintiff is informed and be-
lieves, and was then informed and believed, was taken by the
said W. A. Neal, superintendent, in payment for convict
hire.

"(9) That during the year 1898, the proceeds of the said
two notes placed to the credit of the said penitentiary account
in the plaintiff bank were, in the due and regular course of
business, checked out of the plaintiff bank for the use of the
said State penitentiary, by checks signed by the said W. A.
Neal, superintendent, and countersigned and certified as cor-
rect by R. E. Burriss, clerk of the said State penitentiary, in
accordance with the usage and practice of the said State
penitentiary then and theretofore prevailing, and in payment
of legal and proper claims against the penitentiary and the
defendant, according to law; and that the defendant, the
State of South Carolina, got, received and still retains the
full benefit thereof.

"(10) That the plaintiff has demanded the payment of
said notes and of the indebtedness represented thereby, and

the repayment of the said proceeds of said notes placed to the credit of said penitentiary account with the plaintiff bank, together with interest thereon, but no part thereof has been paid.

"Wherefore, the plaintiff demands judgment against the defendant for $2,600, with interest on $2,000 thereof from December 24, 1898, and on $600 thereof from January 11, 1899, together with $1.50 cost of protest, and the costs and disbursements of this action."

To this complaint the defendant served an answer, but before the cause was heard; also a demurrer, of which the following is a copy:

"The defendant demurs to the complaint herein on the ground that it appears upon the face thereof that it does not state facts sufficient to constitute a cause of action, in that:

"(1) W. A. Neal, as superintendent of the penitentiary of South Carolina, had no power or authority to collect or receive the hire due the State for convicts, which is alleged to be the consideration of the notes sued on, and he can only be held individually responsible for such notes.

"(2) If W. A. Neal, as superintendent of the penitentiary, had such power or authority, he did not have the further power or authority to take the said notes in payment of such hire; and the notes must be considered as taken on his own responsibility, and he must be held individually liable for the amount thereof as so much cash received by him, and the negotiation of the notes must be considered as made for his personal benefit and not for the benefit of the State, and is individually liable therefor.

"(3) If W. A. Neal, as superintendent of the penitentiary, had such power or authority, to the extent indicated above, he did not have the still further power or authority to indorse said negotiable notes and discount them, as alleged, at the plaintiff bank, and so bind the State therefor; and he can only be held individually responsible on such indorsement.

"(4) If W. A. Neal, as superintendent of the penitentiary, did not have originally such power or authority and could not bind the State of South Carolina by his taking and indorsement of said notes, then the State cannot be liable thereon, on the ground as alleged, that the State acquiesced in and approved such negotiation and accepted and retained the benefit thereof.

"And the defendant moves upon said grounds to dismiss the complaint."

Order overruling demurrer is as follows:

"On hearing the written demurrer to the complaint herein that said complaint does not state facts sufficient to state a cause of action, and after hearing argument by Mr. Attorney General Bellinger, defendant's attorney, in support of the demurrer, and by Mr. J. S. Muller, attorney for the plaintiff, contra, it is ordered: That the said demurrer and the four several grounds thereof therein stated be and the same are hereby overruled."

From this order the defendant appealed on the following exceptions:

"That his Honor, the presiding Judge, erred in not holding that the complaint does not state facts sufficient to constitute a cause of action, in that:

"(1) The superintendent of the penitentiary has no power or authority: (a) To collect and receive hire for convicts due the State. (b) To accept promissory notes in payment of such hire. (c) To indorse or negotiate, on behalf of the State, such promissory notes.

"(2) That the State is neither bound as indorser, nor liable to the indorsee as for money had and received, for money advanced the superintendent of the penitentiary by the indorsee, upon promissory notes accepted by such superintendent, without authority, in payment of convict hire due the State, indorsed and negotiated by him as such superintendent, by reason (a) of its acceptance and retention of the

money advanced; (b) or acquiescence in and approval of
the acceptance, indorsement and negotiation of such notes,
no act or joint resolution of the General Assembly showing
such acquiescence and approval being alleged to exist.

"(3) That the allegation in the complaint that the State
acquiesced in and approved the acceptance and negotiation
of such promissory notes is insufficient, in that such acquies-
cence and approval could only be shown by an act or resolu-
tion of the General Assembly; and the Court should take
judicial notice of the non-existence of such act or resolu-
tion."

*Attorney General G. Duncan Bellinger, Esq.,* for appel-
lant, cites: *Where party deals with agent of State, he must
see that act of the agent is authorized:* 1 Ency., 287, and note
2; 12 S. C., 218; 1 N. & H., 270. *Superintendent of peni-
tentiary could only collect and pay out moneys:* Crim. Code,
551, sub. 7; 15 Ency., 701. *State cannot be bound by usage
and custom:* 1 Et. Cl., 290; 10 Metc., 375; 92 Tenn., 154;
21 Wall., 139; 46 Mo., 186; 36 Am. St. R., 81; 13 Am. St.
R., 780; 10 Mass., 10; 14 Pick., 1141; 7 Allen., 29; 6 Pick.,
536; 84 Ohio, 41; 34 N. Y., 425; 44 N. Y., 503; 84 Va.,
116. *Credit of State cannot be pledged by indorsement of
note by its officer:* Con., art. X., secs. 6, 11, 2. *Doctrines of
estoppel, acquiescence and ratification do not apply to a
State:* 96 N. C., 588; 67 Ill., 435; 2 Hill (N. Y.), 159; 26
Wend., 191; 45 Mo., 528.

*Messrs. Clark & Muller,* contra, cite: *Indorsements of the
notes here by W. A. Neal are the indorsements of the de-
fendant:* 1 R., 501, 502; 7 A. R., 107; 6 A. D., 160; 37 A.
D., 204; 19 N. Y., 312; 15 Pet., 389; 127 U. S., 597; 40 S.
C., 163; 43 S. C., 534; 3 A. R., 139; 5 Wheat., 334; 44 A.
D., 665; 1 Wall., 234; 104 U. S., 93; 50 S. C., 241. *Neal
had authority to so indorse the notes implied from State's
acquiescence in and approval of this custom:* 5 S. C., 420; 43
N. Y., 272; 26 S. C., 80; 27 L. R. A., 402. *State is estopped*

*from denying his authority by receiving proceeds of notes so
discounted:* 59 Hun., 627; 46 S. C., 15; 56 S. C., 320; 4 A.
& E. Dec. in Eq., 349; 27 L. R. A., 402. *Plaintiff can re-
cover as for money had and received:* 49 S. C., 465; 42 S. C.,
447; 2 Ency. P. & P., 1016; 1 Mill. Con. R., 394; 35 S. C.,
191; 57 S. C., 496; 44 A. D., 665.

April 18, 1901. The opinion of the Court was deliv-
ered by

MR. JUSTICE JONES. This action was brought pursuant
to a joint resolution of the General Assembly, approved
February 17, 1900, 23 Stat., 554, to test the liability of the
State to pay two notes taken by the superintendent of the
State penitentiary for the hire of convicts, and by him in-
dorsed to the plaintiff. The appeal comes from an order of
Judge Klugh, overruling the State's demurrer to the com-
plaint for insufficiency. The complaint, demurrer, order
overruling and the exceptions thereto, are officially reported
herewith.

The questions presented by the exceptions may be thus
stated:

1. Whether Neal, as superintendent of the State peniten-
tiary, had power to collect and receive the hire due the State
for convicts.

2. Whether, if he had such power, he also had power, ex-
press or implied, to take negotiable notes therefor, and
bind the State by his indorsement thereof to the plaintiff
bank.

3. Whether the State is estopped to deny its liability by
the alleged acquiescence in and approval of such negotia-
tions, and the retention of the benefits thereof.

The first question has been recently determined by the
case of *State* v. *Neal*, 59 S. C., 259, where the Court held
that the superintendent of the penitentiary is criminally lia-
ble in failing to turn over to his successor moneys
coming into his hands from the hire of convicts, since
it was his duty under the statute to receive moneys

arising from the hire of convicts. But power to receive money for convict hire does not imply power to bind the State by the officer's indorsement and negotiation of notes taken therefor. No express authority to so pledge the credit of the State is alleged or shown, and no such power can be implied unless it is necessarily incident to the power to receive *money* for convict hire. It needs no argument to show that the power to pledge the State's credit is not necessary to execute the power to receive money for the State's use. Testing the question by the law of private agency, all the authorities hold that the right of an agent to indorse the principal's name on common paper is not necessarily incident to the agent's power to collect and receive money for the use of the principal. Under this principle, an attorney to sue for, recover and receive money for his client, is not warranted under such authority to assign the judgment obtained. *Noonan* v. *Ex'ors,* 1 Bailey, 437. So strict is the law applicable to commercial paper in this State, an express authority to an agent to indorse commercial paper in the name of the principal will not authorize the agent to receive notice of dishonor, since that is not necessarily incident to the right to indorse. *Valk* v. *Gaillard's Adm.,* 4 Strob., 99. All the authorities agree that an agent cannot bind the principal by indorsement of negotiable paper except under an express power to the execution of which such indorsement is essential. 1 Parson's Contracts, 62; 1 Daniel Neg. Inst., 294; Tiedman on Com. Paper, 77, 312, 431; *Jackson* v. *Bank,* 36 Am. St. Rep., 84, and notes. Sometimes the act of the private agent may bind the principal if within the apparent scope of his authority. But in this case, we deal with the act of a public officer, whose authority to act must be real, not merely apparent. A public officer derives his authority from statutory enactment, and all persons are in law held to have notice of the extent of his powers; and, therefore, as to matters not really in the scope of his authority, they deal with the officer at their peril. *Bond Debt Cases,* 12 S. C., 200; 19 Am. & Eng. Enc. Law,

506, and cases cited in the note on page 507. Whenever the United States Supreme Court, notwithstanding the inhibition of suits against the State without its consent, rightfully assumes jurisdiction of a suit against a State officer, it is upon the ground that the officer's act is not State action, but the individual act of the person holding the office, in cases where the officer's act is not authorized by a valid and constitutional statute. If authorized by valid law, the officer's act is the State's act; if not so authorized, the officer's act is his own. See among many cases that might be cited, the noted *Virginia Coupon Cases,* 114 U. S., 270, *et seq.,* and *In Re Ayers,* 123 U. S., 443. In this case the State has waived exemption from suit; but the question yet remains whether the officer's act was the State's act, and that question depends upon whether the officer's act was authorized by any valid statute. The complaint alleges no such statute, and there is none; and if such existed, a grave question as to its constitutionality would arise under art. X., sec. 7, which provides: "No scrip, certificate or other evidence of State indebtedness shall be issued except for the redemption of stock, bonds or other evidences of indebtedness previously issued, or for such debts as are expressly authorized in this Constitution." The complaint alleges that there was a usage or practice for the superintendent of the penitentiary to so indorse notes taken for convict hire, and that such practice was known to and approved by the defendant. But such usage, if it existed, was unreasonable and in conflict with law, and could have no effect to authorize what could not be done without legislative authority. The statute giving Neal the right merely to receive money for convict hire, constituted his specific instructions as a public agent, and the usage could not vary or enlarge the statutory authority. *Barksdale v. Brown,* 1 Nott & McCord, 517. This is a proper occasion to say that any such usage is unlawful and intolerable, in so far as it is thereby sought to pledge the credit of the State; for, as said in the *Bond Debt Cases, supra,* "The credit of a State is a sacred thing; should not be prostituted

to every common purpose and hawked about on 'change like the note of a huckster." The complaint, in alleging the government's acquiescence in and approval of such conduct, states a mere conclusion of law which is not admitted by a demurrer. The State's acquiescence in or approval of such conduct could only be manifest by a valid act or joint resolution of the General Assembly, and none such is alleged.

The doctrine of equitable estoppel has no application to a sovereign State. Equitable estoppel rests upon an implication of fraud in the party sought to be estopped, and fraud ought not to be imputed to the sovereign. The State can only act under its Constitution and through its legislative enactments pursuant thereto, and can only ratify in the manner in which it could originally authorize; and if it could be estopped to assert the truth, the effect might be to fix upon the State responsibilities in conflict with its Constitution and laws. All men are bound to take notice of the special authority of the State's officers, and when dealing with them outside their authority, they assume the peril with their eyes open, and cannot be heard to say that they placed reliance upon the State. The question is not one of intention, but of power; and if the officer has not power to act, his action is not State action, and so affords no basis upon which to predicate estoppel against the State. And if it were in any sense a question of intention, the State's intention can only be evidenced in a constitutional way. On the question whether equitable estoppel applies to a State, respondent cites from a note to *Williamson* v. *James,* 4 A. & E. Dec. in Equity, 367, to this effect: "The principles of estoppel also extended as far as they are applicable to a State—*State* v. *Taylor,* 28 La. An., 460; *State* v. *Ober,* 34 La. An., 359; *State* v. *Flint &c. R. R. Co.,* 89 Mich., 481; and to the United States—*U. S.* v. *Scott,* 38 Fed. Rep., 393." But further on, in the same note, it is stated that "nothing short of legislative act or resolution will estop a State from claiming the title to property—*Alexander* v.

*State,* 56 Ga., 478." And further, that "the acts of State officers in assessing and collecting from a third person taxes on property owned by the State will not estop it, though the moneys so collected were applied to public uses—*State v. Jones,* 95 Ind., 175; *McCaslin* v. *State,* 99 Ind., 428; *State* v. *Portsmouth Savings Bank,* 106 Ind., 435." On this point the attorney general cites Bishop on Contracts, sec. 310, where it is stated, "Ordinarily and by most opinions an estoppel does not take effect against the sovereign State or United States." Throop on Pub. Officers, p. 552, where it is stated, "The government is never estopped on the ground that its agent is acting under apparent authority which is not real." To the same effect, the attorney general cites *State* v. *Bevers,* 96 N. C., 588, and *People* v. *Brown,* 67 Ill., 435; to which may be added the leading case in North Carolina, *Taylor* v. *Shufford,* 15 Am. Dec., 512, and in Illinois, the case of *Dement* v. *Roker,* 126 Ill., 174; 19 N. E. Rep., 33. In the case of *Filor* v. *United States,* 9 Wall, 45, the Supreme Court of the United States held that the "unauthorized acts of officers cannot estop the government from insisting upon their invalidity, however beneficial they have proved to the United States." *Heyward* v. *Farmers &c. Co.,* 42 S. C., 138. See, also, the following cases : *State* v. *Brewer,* 64 Ala., 287; *Pulaski County* v. *State,* 42 Ark., 118; *Salem Imp. Co.* v. *McCourt,* 26 Or., 93 ; 41 Pac., 1105.

Nor do we think this action can be sustained, as contended by the respondent, as an action for money had and received. The State has only received that to which it was entitled, viz : money for the hire of convicts, received from the hands of the superintendent of the penitentiary. Plaintiff has paid no money to the State by mistake; for in the eye of the law plaintiff dealt with Neal, not with the State, and received from Neal all that it contracted for, the liability of the makers of the notes, supported by Neal's indorsement. In addition to this, as has already been shown, no equitable estoppel arises against the State as a basis for an implied contract, and the State cannot be made liable as

for an implied contract, when there was no power to make an express contract in the manner of this case.

The judgment of the Circuit Court is reversed and the case remanded, with instructions to sustain the demurrer and dismiss the complaint.