### 6671

### EHRLICH v. JENNINGS, STATE TREASURER.

1. THE TITLE OF A STOLEN NEGOTIABLE INSTRUMENT having legal inception, acquired in good faith, before maturity and without notice, is good against the world.

2. A COUPON BOND ISSUED BY THE STATE IS A NEGOTIABLE INSTRUMENT and the State incurs the same responsibilities in issuing it as an individual. The State is liable for such bond in hands of *bona fide* holder, before maturity, without notice surrendered for cancellation and stock issue therefor under the provision of the statute, but stolen before cancellation and put in circulation by the thief.
*Branch* v. *Com. of Sinking Fund,* 80 Va., 427, and *District of Columbia* v. *Cornell,* 9 Sup. Ct. Rep., 694, *distinguished from this case.*

3. BOND DEBT OF STATE.—The recognition of such bond as a valid obligation of the State does not increase the State debt in the sense of the provision of sec. 11 of art. X of the Constitution, prohibiting the General Assembly from increasing the State debt without a vote of the people.

4. MANDAMUS will lie to compel the State Treasurer to exchange a certificate of stock for a State bond, as provided by statute, in the hands of a *bona fide* holder, where the bond has been once exchanged for stock, but stolen before cancellation and put in circulation, and the right of such holder to such exchange is not merely equitable.

5. SUIT AGAINST THE STATE.—MANDAMUS to compel the State Treasurer to exchange certificate of stock for a bond is not a suit against the State.

Relation by Edward Ehrlich in the original jurisdiction of the Court for mandamus to compel R. H. Jennings, State Treasurer, to exchange certificate of stock for coupon bond.

*Mr. W. T. Aycock,* for relator, cites: *Mandamus is the proper remedy:* 48 S. C., 5; 38 S. C., 322. *Coupon bond payable to bearer is a negotiable instrument:* Tied on Com. Pa., Sec. 473; 2 S. C., 348; 103 U. S., 318; 64 Ala., 128; 12 S. C., 200. *A stolen negotiable bond is good in hands of bona fide holder:* 2 Wall., 110; 12 S. C., 272. *Recognition of it:* 3 Q. B. D., 525; 71 Wis., 578; 80 Va., 427; 16 21 S. C., 580; 12 S. C., 273; 92 U. S., 641.

*Attorney General J. Fraser Lyon* and *Mr. J. William Thurmond,* contra, cite: *The bond is not a binding obligation of the State because there was no voluntary delivery of it:* 3 Q. B. D., 525; 71 Wis., 578; 80 Va., 427; 16 Barb., 555; 72 Ill., 559; 21 Mich., 415; Big. Bills & Notes, 572. *A State is not bound by the unauthorized acts of its officers:* 1 Dan. on Neg. Inst., 461; 23 Ency., 370, 384; 142 U. S., 375; 10 Wall., 683; 45 Mo., 528; 90 N. Y., 102; 75 U. S., 269; 8 L. R. A., 401; Story on Ag., 319; 9 Wheat., 720; 1 Pet., 318; 96 N. Y., 71; 53 L. R. A., 855; Meacham on Rev. Of., Sec. 829, *et seq.;* 7 Wall., 666; 60 S. C., 473;

114 U. S., 207; 123 U. S., 443. *Recognition of this bond will increase State debt, which cannot be done by State officer:* 48 S. C., 395; sec. 7, art. VIII, and sec. 5, art. X, Con.; 111 U. S., 83; 86 Ia., 331; 12 S. C., 282; 7 Cal., 65; 103 U. S., 637; 52 N. Y., 563; 9 Cal., 85; 130 U. S., 662; 6 Cal., 99; 13 Cal., 1403; 12 S. C., 200. *State is not estopped:* Bishop. Cont., 993; Throop on Pub. Of., 551; 21 Nev., 466; 60 S. C., 475. *State bonds exchanged for stock have lost their vitality:* 5 Denio, 517; 26 Ency., 471; 80 Va., 427; 100 Tenn., 348; 94 U. S., 225; 10 Wall., 676; 76 Ill., 189; 30 La. Ann., 34; 2 Woods, 594; 84 N. Y., 532; 112 U. S., 25; 130 U. S., 655; Rand. Com. Pa., sec. 327; 29 La. Ann., 81; 10 So. R., 714; 11 So. R., 135.

This case was argued first in this Court during the April Term, 1907, and afterwards ordered to be reargued before the Court *en banc* on September 27, 1907.

September 27, 1907. The opinion of the Court was delivered by

MR. JUSTICE JONES. The relator as holder of a coupon bond, No. 2525, for $1,000, payable to bearer, issued by the State in June, 1893, presented the same to the State Treasurer and demanded a certificate of stock in exchange therefor under the Act of 1892 entitled "An act to provide for the redemption of that part of the State debt known as the Brown Consul bonds and stocks by issuing other bonds and stocks." The State Treasurer refused to make the exchange on the ground that said bond had been previously redeemed, having been surrendered to the State Treasurer by a holder in exchange for stock, and thereafter had been stolen from the treasury vault by a clerk in the office. Mandamus is now sought to compel the State Treasurer to issue stock in exchange for said bond.

No marks to indicate the cancellation were ever placed upon the said bond, although the statute expressly declared that such surrendered bond "shall immediately upon such

surrender be cancelled and filed by the State Treasurer with the permanent records of his office." It is admitted that relator is a *bona fide* holder for value before maturity and without notice. The general rule of law is that a thief of personal property cannot convey to purchaser, however innocent, any title to the stolen property as against the real owner. But from the highest considerations of public policy the law excepts from the rule negotiable instruments acquired in good faith before maturity and without notice, and makes the title of such holder good against the world. Bond Debt Cases, 12 S. C., 200; *Spooner* v. *Holmes,* 102 Mass., 503, 3 Am. Rep., 491; *Evertson* v. *Na. Bk. of Newport,* 66 N. Y., 14, 23 Am. Rep., 9; *Murray* v. *Lardner,* 2 Wall., 110; *Cooke* v. *United States,* 91 U. S., 389.

The "Bond Debt Cases," 12 S. C., 201, show that a coupon bond of the State, valid in its inception, is a negotiable security, and the State issuing such negotiable paper incurs the same responsibilities which attach to individuals or corporations in like cases. There is no suggestion that the bond in question was not valid when originally put in circulation, and it being admitted that relator is a *bona fide* holder thereof at this time, his title can in nowise be affected by the surrender of the bond to the Treasurer by some antecedent holder and the subsequent theft by means of which it was again put in circulation. The method which the State had adopted to take such bond out of circulation, cancellation, was not complied with by those intrusted by the State with that duty. The direction to cancel surrendered bonds was designed to prevent the very possibility which has happened, and the failure of the State officers to comply cannot be treated as a circumstance of no consequence, for the absence of marks of cancellation made it possible for the thief to put the bond in circulation.

The respondent relies upon the case of *Branch* v. *Commissioners of the Sinking Fund,* 80 Va., 427, 56 Am. Rep.,

596.  The syllabus of that case is as follows: "Coupon bonds issued by the State of Virginia had been redeemed and others had been issued in their stead.  The bonds so redeemed were stolen from the State and came into possession of a *bona fide* holder for value who presented them to be refunded in other State bonds.  *Held,* that mandamus would not lie to compel the funding."  This result is based upon three reasons: (1) The bonds could not be funded because they were not legal outstanding obligations of the State, having been redeemed and extinguished. (2) That if the bonds were legal obligations of the State to be paid at maturity, the contract of the State was to pay money, not give other bonds for them. (3) That the bondholders were, under the circumstances, guilty of negligence in failing to inform themselves, as they could and ought to have done by a breath, as to the genuineness of the bonds. It will be observed that the third reason given is contradictory of the view that the holder was a *bona fide* holder for value before maturity without notice, as that language is understood in this State and now generally in this country and England.

At one time in England, under the case of *Gill* v. *Cubitt,* 3 Barn & C., 466, it was held that the holder to have good title must not have taken the negotiable paper under circumstances which ought to have excited the suspicion of a prudent man, and this view has received some support in this country, but in *Goodman* v. *Harvey,* 4 Ad. & E., 870, the doctrine of *Gill* v. *Cubitt* was completely discarded and the rule declared that negligence, which is not so great as to warrant an inference of fraud or bad faith, will not affect the title of the holder.  Such is now generally the rule in this country.  *Goodman* v. *Simonds,* 20 How., 343; *Murray* v. *Lardner,* 2 Wall, 110; *Witte* v. *Williams,* 8 S. C., 290.  We refer to this to show that in so far as the Virginia case rests upon the negligence of the holder as affecting his title, it cannot receive any sanction in this State, for if the holder was merely negligent his title should have been held

18—78

unaffected, whereas if his negligence was so gross as to warrant an imputation of bad faith, that made a case wholly different from the case at bar, where there is not a suspicion of bad faith. With respect to the second reason given in the Virginia case, if it be conceded that the bond in question is a valid obligation of the State in the hands of a *bona fide* holder, it would seem clear that such *bona fide* holder is clothed by law with every right given to holders of the bonds by the statutes which authorized their issuance, exchange or redemption. The main reason upon which the doctrine of the Virginia case rests is that which treats the bonds when once surrendered to the Treasurer in exchange for other bonds as dead matter, whose vitality could never be restored without voluntary redelivery by the State, and there being no such redelivery, the bonds should be held to be in the category of commercial paper stolen from the maker before it had legal inception. Although there is conflict, much authority exists for the view that an innocent holder for value of paper commercial and negotiable in form but which had never been completed by delivery cannot acquire rights thereto against the alleged maker. *Burson* v. *Huntington,* 21 Mich., 415, 4 Am. Rep., 497; *Cline* v. *Gutherie,* 42 Ind., 13 Am. Rep., 357; *Salley* v. *Terrill,* 95 Me., 553, 55 L. R. A., 730.

This rule, however, cannot properly apply in a case where the negotiable paper has once become operative by a valid delivery. The real point of inquiry is, admitting a valid and strictly negotiable paper in the hands of a *bona fide* holder before maturity, how far can *intervening* circumstances affect the title of the holder? The general rule is that payment before maturity is no defense against a subsequent *bona fide* holder for value before maturity. 3 Randolph Com. Paper, sec. 1470; 2 Dan. Neg. Inst., sec. 1233; *Haug* v. *Riley* (Ga.), 40 L. R. A., 249; *Rockville Nat. Bank* v. *Citizens Gas Light Co.,* 72 Conn., 581. It is the duty of the maker paying commercial paper before maturity to take reasonable precaution to prevent its restoration to

circulation by accident or fraud. In *Ingham* v. *Primrose,* 7 C. B. N. S., 82, the acceptor of a bill after paying it, and intending to cancel it, tore it in halves and threw it into the street, but the drawer having picked up the pieces and pasted them together put the bill again into circulation. The acceptor was compelled to pay a second time.

In *California* v. *Wells Fargo & Co.,* 15 Cal., 236, certain warrants issued by the State of California were paid and deposited in the office of the Treasurer, and were afterwards stolen form the office and passed into the hands of a *bona fide* holder, who presented them to the Treasurer to be exchanged for bonds under a statute of that State. The Treasurer, not aware of the theft, exchanged bonds for warrants. On discovering the theft afterwards, he brought suit to recover the bonds, but the Court held that the bonds were valid debts of the State in hands of the innocent holder.

In *Rockville Nat. Bank* v. *Citizens Gas Light Co.,* 72 Conn., 576, coupon bonds of the defendant had been paid before maturity and surrendered, but not marked cancelled, and left in the hands of the defendant's treasurer, who, with no power to reissue, fraudulently pledged same with plaintiff bank which took them before maturity, *bona fide* and without notice. The Court held that plaintiff was entitled to recover upon the bonds.

The case of *District of Columbia* v. *Cornell,* 9 Sup. Ct. Rep., 694, is distinguishable from this case in at least two important particulars: (1) the certificates involved in that case were held not to be strictly commercial paper, (2) when paid they were in fact marked cancelled, although the marks of cancellation were removed by the thief, a clerk in the office.

The principle that a *bona fide* holder cannot acquire title where there is absolute want of power in the State or its officers to issue negotiable paper has no application in this case, the bond in question having been originally issued by due authority. The holder is not claiming by virtue of any *reissue* of the bond after its redemption, but by virtue of the

original issue and relation to it as a *bona fide* holder unaffected by intervening facts. The claim is not that the Treasurer, or any one in his office, had power to reissue the bond, but that he was charged by the State with the duty to keep it out of circulation by cancellation and that his failure to do so was the State's failure. It is true the doctrine of estoppel *in pias* does not apply to a sovereign State and that the State can only act under its constitution and through its legislative enactments, and that therefore contracts cannot be created against the State except under such sanctions. *Bank* v. *State,* 60 S. C., 475, 38 S. E., 629. But here we have a bond of the State issued by due authority of the Legislature, which the representative of the State failed to cancel as directed by statute, and which is now under the law merchant the property of the relator. As stated by Chief Justice Waite in *Cook* v. *United States,* 91 U. S., 243 : "A government may suffer loss through the negligence of its officers. If it comes down from its position of sovereignty and enters the domain of commerce it submits itself to the same laws that govern individuals there. Thus if it becomes the holder of a bill of exchange it must use the same diligence to charge the drawers and indorsers that is required by indiviuals; and if it fails in this, its claim upon the parties is lost. *U. S.* v *Barker.* 12 Wheat., 559. Generally in respect to all the commercial business of the government, if an officer specially charged with the performance of any duty authorized to represent the government in that behalf neglects that duty and loss ensues the government must bear the consequences of his neglect." It may be further said that the right of a *bona fide* holder of commercial paper under circumstances like these does not wholly rest upon the law of estoppel, but is grounded upon high public policy which is subserved by making him secure in his title.

It is urged in behalf of the respondent that the recognition of the bond in question as a valid debt of the State

when it has already been redeemed by the issue of stock in exchange would result in increasing the debt of the State in violation of the Constitution, sec. 11, art. X, which forbids the General Assembly from creating any further debt or obligation without first submitting the question to the qualified electors, etc. As declared in *Whaley* v. *Galliard,* 21 S. C., 581, with reference to a·similar provision in the Constitution of 1868, the object of the provision was to place restrictions upon the power of the Legislature to contract debts. It has no application to a case like this. We are not concerned now with the validity of the stock issued in exchange for the bond, but the principle announced touching the rights of a *bona fide* holder would surely protect the holder of such stock in his title. The bond in question in the hands of the relator is no new debt attempted to be created by the unauthorized act of some officer, or even by the judgment of a court, but represents the old debt provided for in the statute authorizing the issue of that series of bonds.

Having thus established the status of relator's title to the bond in question, we proceed to consider whether mandamus should issue to compel the exchange demanded.

Mandamus lies to compel a public officer to perform a plain ministerial duty imposed by law, involving no discretionary power to the performance of which the relator has a right and to enforce which he has no other adequate and specific legal remedy. Every condition of this law governing mandamus is met in this case. There is no other adequate legal remedy. We have shown the relator's title to the bond in question to be impregnable. As owner of the bond he is unquestionably entitled to every right conferred upon the holder by the statute authorizing its issuance, exchange or redemption. He has presented to the proper public officer the actual bond for exchange and his demand has been refused. The officer has no discretion to refuse such demand by a *bona fide* holder and the statute

imposes upon him the plain ministerial duty to make the
exchange upon demand and surrender of the bond.

In *Lord* v. *Bates,* 48 S. C., 95, 26 S. E., 213, the Court
refused mandamus because the statute required the funding
of certain bonds upon their actual surrender, a condition
which the holder had not met. In this case the bond is
actually tendered, hence there is nothing in the case of
*Lord* v. *Bates* antagonistic to the issuance of the writ in this
case.

The Attorney General, however, waives all questions as to
the remedy.

The right of a *bona fide* holder of negotiable paper is not
merely equitable. It is a legal right under the law mer-
chant, and mandamus should not be denied upon the ground
that relator's right is a mere equity.

This is in no sense a suit against the State without its
consent, for whenever mandamus lies it compels the
the performance of official duty imposed by the
State.

The writ should be issued as prayed.


MR. JUSTICE WOODS AND CIRCUIT JUDGES WATTS, GAGE,
DANTZLER, MEMMINGER AND WILSON *concur in this
opinion.*


MR. JUSTICE GARY, *dissenting:* This is an application to
the Court, in the exercise of its original jurisdiction, for a
writ of mandamus, requiring the State Treasurer to issue
a certificate of stock in exchange for a bond which was
heretofore surrendered to the Treasurer and a certificate
of stock issued in exchange for it, under the provisions of
the Act of 1892 entitled "An Act to provide for the
redemption of that part of the State debt known as the
Brown Consul Bonds and Stocks, by issue of other bonds
and stocks," which, among others, contains the following
provisions:

Section 1. "That the State Treasurer shall cause to be prepared a sufficiency of blanks of coupon bonds and certificates of stock of uniform design and appearance, to be colored brown, as will provide for a total issue of an amount (face value) in the aggregate of such bonds and certificates of stock, not to exceed the aggregate amount of bonds and stocks that have been or may be issued, under an Act entitled 'An Act to reduce the volume of the public debt and provide for the payment of the same,' approved December, A. D. 1873, and Acts amendatory thereto."

Section 2. "That the said coupon bonds shall be exchangeable for certificates of stock, and said certificates of stock shall be exchangeable for coupon bonds."

Section 3. "That all bonds and certificates of stock surrendered, as hereafter provided for, shall immediately upon such surrender be cancelled, and filed by the State Treasurer with the permanent records of his office, and a correct registry shall be kept by the State Treasurer, of all exchanges made under the provisions of this Act, so as to exhibit in a separate account and convenient form, the names of the holders thereof, and the number and amounts of all such bonds and stocks, received into the Treasurer's office, together with the numbers and denominations of all bonds and stocks, issued in exchange therefor, or sold by him under the provisions of this Act. And the Secretary of State is hereby required to keep at all times a correct registry of all the bonds sealed by him under the provisions of this Act. And the Governor is in like manner hereby required to keep a similar registry of all bonds signed by him, each registry to be accessible to public inspection at all times."

The said bond was not cancelled but was stolen and placed in circulation, and came into the hands of the petitioner, who alleges that he is a *bona fide* holder thereof.

There is not even the slightest suspicion of wrong, on the part of the petitioner, attaching to his possession of the bond.

The first question that will be considered is whether mandamus is the appropriate proceeding.

There is no difference in principle between this case and that of *Lord* v. *Bates,* 48 S. C., 95, 26 S. E., 213, which was an action instituted, in the original juridiction of this Court for a writ of mandamus requiring the State Treasurer to fund certain bonds which were lost. The application was refused on the ground that the duty of the Treasurer was not plainly defined, peremptory and ministerial.

In that case the Court quoted with approval, the following language from the case of *International Cont. Co.* v. *Lamont,* 155 U. S., 303, 308:

"It is elementary law that mandamus will only lie to enforce a ministerial duty, as contradistinguished from a duty which is only discretionary. * * * Moveover, the obligation must be both peremptory and plainly defined. The law must not only authorize the act (*Commonwealth* v. *Boutwell,* 13 Wall., 526), but it must *require* the act to be done. 'A mandamus will not lie against the Secretary of the Treasury unless the laws require him to do what he is asked in the petition to be made to do.' *Reeside* v. *Walker,* 11 How., 272; see also *Secretary* v. *McCarahan,* 9 Wall., 298; and the duty must be 'clear and indisputable.' *Knox County Commissioners* v. *Aspinwall,* 24 How., 376."

To the same effect is the case of *United States* v. *Windom,* 11 Sup. Ct. Rep., 197, 199, in which the Court says:

"The principle upon which persons holding public office may be compelled, by a writ of mandamus, to perform duties imposed by law have been distinctly defined. * * * That principle is that the writ of mandamus may issue where the duty which the Court is asked to enforce is plainly ministerial, and the right of the party applying for it is clear, and he is without any other adequate remedy; and it cannot issue in a case where its effect is to direct or control the head of an executive department, in the discharge of an executive duty, involving the exercise of judgment or discretion.

"The doctrine to be gathered from these cases, as well those in which mandamus was granted, as those in which it was refused, especially from the two leading cases, *Kendall* v. *United States, supra,* and *Decatur* v. *Paulding, supra,* is thus enunciated in *United States* v. *Black, supra,* by Mr. Justice Bradley, who delivered the opinion of the Court: 'The Court will not interfere by mandamus with the executive officers of the government, in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the Court having no appellate power for that purpose; but when they refuse to act in a case at all, or when, by special statute, or otherwise, a mere ministerial duty is imposed upon them—that is, a service which they are bound to perform without further question—then, if they refuse, a mandamus may be issued to compel them.' It is proper here to remark, as applicable to the determination of this case, that, in the extreme caution with which this remedy is applied by the courts, there are cases when the writ will not be issued to compel the performance of even a purely ministerial act. In a case, for instance, where the intention of the officer, though acting within the scope of his duty, had been frustrated by a clerical mistake (*United States* v. *Schurz, supra*), or where the case is one of doubtful right (*Insurance Co.* v. *Wilson,* 8 Pet., 291, 302), or in a case where the relator having another adequate remedy, the granting of the writ may in this summary proceeding affect the rights of persons who are not parties thereto."

See also *Conant* v. *Fuller,* 18 S. C., 246; the concurring opinion of Mr. Chief Justice McIver in *Lord* v. *Bates,* 48 S. C., 95, 26 S. E., 213; *State* v. *Morris,* 67 S. C., 153; *Pugh* v. *Moore* (La.), 10 So. Rep., 710; *Rerwig* v. *Richardson,* 11 So. Rep., 135; 19 Enc. of Law, 732-37, 783.

When the bond was surrendered and a certificate of stock issued in exchange, it lost its legal effect as a subsisting obligation of the State. Cancellation was not a condition precedent upon which the validity of the certificate of stock,

which was issued in exchange therefor, depended; and such requirement was intended simply to prevent fraud *after* the transaction between the holder of the bond and the State had terminated, by the exchange.

The provision as to cancellation stood upon the same footing as that in regard to the registry of the bonds, as to which the Court, in the bond debt cases, 12 S. C., 200, 293, used this language:

"It is very manifest that this provision in regard to the registry of the bonds is a mere direction to the Treasurer, and was not designed to be a condition precedent, the performance of which should be necessary to the validity of the bonds. It does not provide that *before any bond is issued* it shall be registered by the Treasurer, but it is clear that the registration is to follow, not precede, the issue of the bonds, and could not, therefore, affect their validity. * * * The Constitution was never designed to afford the means of setting a trap for the holders of the bonds of the State by making their rights dependent upon the performance or nonperformance of duty by one of the officers of the State, after the bonds had been issued."

The rights of the petitioner are equitable, and mandamus is not the proper remedy for the assertion of a mere equity. "The remedy by mandamus rests upon the legal rights of the relator, on the one hand, and the obligations and duties of the respondent on the other, and cannot be predicated solely upon the equitable rights and obligations existing between the parties." 19 Enc. of Law., 731, 732.

The question whether the petitioner is a *bona fide* holder of the bond in question is not ministerial, but strictly judicial in its nature, and the action of the Treasurer in refusing to exchange the bond for a certificate of stock is not subject to control or review by this Court.

The Attorney General, however, stated, upon the hearing of this case, that he did not urge the objection that mandamus was not the proper remedy; and did not contend that

the petitioner had *actual* notice of any facts which would tend to show that he was not a *bona fide* holder of the bond.

Conceding that he had neither actual nor constructive notice of such facts as tended to show that he was not a *bona fide* holder of the bond, it does not by any means follow necessarily that the writ should be granted requiring the Treasurer to make a *second* isue of a certificate in exchange for said bond.

The right of the Treasurer to issue a second certificate of stock involves a question of *power*, and must be determined by the act of 1892, hereinbefore mentioned, under which petitioner contends he is entitled to relief.

The sections of that act hereinbefore set out, and the absence of words conferring power upon the Treasurer to make a second issue of a certificate, clearly show that the Legislature had in contemplation but a single issue in exchange for a bond, and that the Treasurer is not authorized to make a second issue.

In the bond debt cases, 12 S. C., 200, the principle was announced, that after there had been one issue of bonds under the act therein mentioned, there was no power to make a second issue thereunder. In that case the Court used this language:

"These bonds, together with their coupons, must, therefore, upon the foregoing principles, be regarded as valid debts in the hands of *bona fide* holders, if the acts so referred to be constitutional and do in fact authorize their issue, even though it may now appear that all the conditions prescribed may not have been complied with, and even though there may have been the grossest frauds perpetrated by the officers and agents of the State in issuing them and putting them into circulation. It is not and cannot be denied that the acts so referred to, do in fact purport to authorize the issue of bonds, except in the case of the second issue of bonds for the payment of the interest upon the public debt, for which there does not seem to have been the shadow of authority of any kind, and which, therefore, are absolutely

void, no matter in whose hands they may be. For, if the act be construed as giving authority for a second issue, there is no conceivable reason why a third or fourth or an indefinite number of issues could not have been made upon the same construction; and, certainly a construction leading to such a result cannot be a correct one."

That case clearly shows that bonds issued without authority of law are void even in the hands of a *bona fide* holder.

To the same effect is the case of *Branch* v. *Com. of Sinking Fund,* 5 Hansbrough (Va.), 427, in which there was an application for a writ of mandamus to compel the Commissioners of the Sinking Fund to fund certain bonds of the State of Virginia which had been redeemed but were afterwards stolen from the Treasury of the State, and purchased *bona fide* for value, and without notice on the part of the petitioner that they had been stolen.

In refusing the writ of mandamus the Court used this language:

"We are of opinion that, after these bonds with their appurtenances had been redeemed by the State, and taken into her possesion and custody, they ceased to be her obligations; and could not again become such unless she voluntarily redelivered or reissued them. They had run their career, and fulfilled their mission, and had returned to the dusty depository of dead matter in the Treasury and they had been submitted by outstanding equivalents which represent the legal and moral obligations of the State. They had no longer any legal inception or existence as the bonds of the State, and they were and are as though they never had been."

As the act of 1892 does not authorize the second issue of a certificate, the stock which the petitioner prays the Treasurer may be required to issue, would be void, even in the hands of a *bona fide* holder, by reason of a lack of authority to perform such act.

Lastly, if the duty enjoined upon the Treasurer to issue a second certificate is not ministerial, this Court (however

willing it might be to grant the petitioner relief) has not the power in mandamus proceedings to do so; for, when it appears that rights of the State, other than those incidental to mandamus proceedings, are involved, the action becomes in effect a suit against the State, and its rights cannot be adjudicated unless it is made a party, which cannot be done, except by an act of the Legislature.

"When no provision has been made by law for the auditing and payment of claims against the State or when the claim has not been admitted or is disputed, mandamus will not lie, because it would be equivalent to an action against the State and a State cannot be sued without its consent." 19 Enc. of Law., 804, 805.

"That a State cannot be sued in any of its Courts without its express consent, which can only be given by the legislative authority, is a proposition so universally conceded as to render any argument or authority to support it wholly unnecessary. If, however, authority should be asked for, it will be found in almost every case which will be hereinafter cited, where it will be found that the proposition has either been distinctly decided or expressly recognized, and we are not aware of any authority to the contrary." *Lowry* v. *Thompson,* 25 S. C., 416, 1 S. E., 141. See also *Water Power Co.* v. *Electric Co.,* 43 S. C., 154. 20 S. E., 1002, in which the language from *Lowry* v. *Thompson, supra,* is quoted with approval.

For these reasons I dissent.

MR. CHIEF JUSTICE POPE *and* CIRCUIT JUDGES GARY, KLUGH, PRINCE *and* HYDRICK *concur in this opinion.*