14003

ATLANTIC LIFE INS. CO. v. BARRINGER *ET AL.*

(178 S. E., 505)

Messrs. *Adolphus Blair Scott, J. M. Lynch, J. P. McNeill* and *W. Stokes Houck,* for appellant,

Messrs. *Royall & Wright* and *Preston B. Thames,* for respondents,

February 13, 1935.

The opinion of the Court was delivered by MR. G. DEWEY OXNER, ACTING ASSOCIATE JUSTICE.

Action to foreclose a mortgage executed by the respondent T. R. Barringer to the appellant on December 15, 1921,

securing notes aggregating $4,000.00, upon which appellant alleged there was a balance due of $2,288.00 with interest from January 1, 1932. With respect to the respondent Helen T. Arrowsmith, the complaint alleged that she had or claimed some interest in or lien upon the mortgaged premises. In his answer, respondent Barringer alleged that, according to the requirement and specific instructions of appellant, on December 31, 1931, he purchased Richmond exchange for $2,288.00, balance owing to appellant, which operated to satisfy and discharge the mortgage indebtedness. As a further defense, he set up a counterclaim for damages because appellant refused to cancel the mortgage held by it. The counterclaim was dismissed by the Circuit Judge and no appeal therefrom is taken. Respondent Mrs. Arrowsmith, in her answer, alleged payment under the same facts as alleged by the respondent Barringer; that she, on December 31, 1931, accepted a mortgage on said premises and on said date loaned Barringer $2,200.00, which amount, together with $88.00 of Barringer's own funds, was invested in a Richmond exchange, which was sent to appellant in payment of its mortgage indebtedness; that she relied upon the notice sent out by appellant to make payment by Richmond exchange, which would have given her a first mortgage on the premises; and that appellant is estopped to claim a mortgage prior in lien to the mortgage held by her.

The special referee, to whom the cause was referred, after hearing the testimony, made a report sustaining the defenses set up by respondents, which report was confirmed by his Honor, Judge Shipp, by decree dated January 26, 1934. From this decree appellant appeals.

There are two questions involved:

1. Did appellant agree to accept the Richmond bank draft as absolute payment?

2. If not, is appellant, by reason of sending certain notices hereinafter referred to, estopped to set up failure of payment as against respondent, Mrs. Arrowsmith?

The material facts are not in dispute.

On January 1, 1932, there became due and payable on the mortgage sought to be foreclosed a final payment of $2,200.00 and accrued interest of $88.00, making a total of $2,288.00. On December 31, 1931, Mrs Arrowsmith loanèd to Barringer $2,200.00, taking a mortgage on the premises covered by appellant's mortgage, and on the same date gave Barringer her check for that amount, drawn on the First National Bank in Florence, S. C. With this check and $88-.00 of his own funds, Barringer on the same day purchased a check of the First National Bank drawn upon the State Planters' Bank & Trust Company, Richmond, Va., for $2,288.00, payable to appellant. On the same day at Florence, S. C., he mailed this check, addressed to appellant at Richmond, Va. This check was received by appellant on January 2, 1932, which day was a legal holiday throughout the state of Virginia pursuant to a proclamation of its Governor, and consequently the State Planters' Bank & Trust Company was closed on said date. The following day, January 3, 1932, was a Sunday. On January 4, 1932, that being the first business day following receipt of said check, appellant caused the same to be presented for payment to the drawee, State Planters' Bank & Trust Company. Payment by said drawee was refused for the reason that the drawer bank, First National Bank in Florence, was closed. The check was thereupon returned by appellant to Barringer, who was requested to make arrangements to liquidate the principal and interest. Barringer thereupon sent the check back to appellant, contending the same constituted payment, which appellant denied and again returned the check to Barringer.

Respondents rely on certain form notices sent by appellant to respondent Barringer to show that appellant had agreed to accept a Richmond draft as absolute payment. One of these is form notice No. 225, which is admitted to have been notice of payments due sent by appellant to Bar-

ringer. This notice consists of four forms joined together by perforations. The first one of these forms is headed "Mortgage Note Notice," and after this appears the following: "Notice is hereby given of notes due on this loan. These notes should be paid at the Company's home office, Richmond, Va. Please forward money order or Richmond Bank draft so that same will reach this office on or before the due date." The next form is headed "Acknowledgment of Remittance," and following, these words: "We acknowledge with thanks the receipt of the remittance as indicated below. Cancelled notes will be sent you as soon as our bank reports payment of the check. We request that future payments be made by money order or Richmond Bank Draft. Other form of remittance necessitates withholding cancellation and delivery of notes for about three weeks." The next form has to do with transmitting the paid notes, and the fourth and last form is for the use of the company. Neither of the two last-named forms has any bearing on the question at issue.

Respondent Barringer also received notices on the company's form No. 248, one of which, dated May 14, 1931, was introduced in evidence. This form contained the following, among other things:

"We acknowledge receipt of remittance as indicated below. The cancelled notes will be sent to you as soon as our bank reports the collection of the check.

"We request that future payments be made by Postal Money Order or Exchange on a Richmond, Va., bank.

"If remittance other than Richmond or New York exchange, or Money Order was received, the cancellation and delivery of notes will be withheld for three weeks."

Respondent Barringer testified that, prior to the last payment, he had been sending his personal checks, or in a few instances checks of third parties, and that it had been a period of around three weeks before he ever received his cancelled notes; that when the last payment came due, how-

ever, desiring to refinance the mortgage, he sent a Richmond exchange so that the mortgage would be paid and cancelled at once.

Did the Richmond bank draft constitute absolute payment?

"In the absence of any agreement to the contrary, money is the sole medium of payment." *Brown v. Huskamp,* 141 S. C., 121, 139 S. E., 181.

"This Court has repeatedly, and recently held that a check does not constitute payment, unless it produces payment in cash." *Holladay v. South Carolina Power Co.,* 169 S. C., 241, 168 S. E., 691.

"The giving of a check by debtor for the amount of his indebtedness is not, in the absence of an express or implied agreement to that effect, a payment or discharge of the debt, the presumption being that the check is accepted on condition that it shall be paid." *Bewley-Darst Coal Co. v. Laurens Gin & Fuel Co., et al.,* 126 S. C., 219, 119 S. E., 589, 590.

The fact that the check is a cashier's check does not alter the rule. *Lloyd Mortgage Co. v. Davis,* 51 N. D., 336, 199 N. W., 869, 36 A. L. R., 465; *Smith v. Mills,* 112 Or., 496, 230 P., 350.

We gather from the brief of respondents that they do not contest the foregoing well-settled principles, but contend that these notices constituted an agreement on the part of appellant to accept a Richmond draft as absolute payment. The referee states that these notices were "tantamount to a direct instruction to the mortgagor to send the remittance in such manner, and if, in complying with this invitation, a loss was incurred, the loss should fall upon the insurance company and not upon the mortgagor."

We are unable to agree with this contention, or the foregoing conclusion reached by the referee which was sustained by the Circuit Judge. The portion of the notices relied on

by respondents amounted to a suggestion or a request at most. Indeed, respondent Barringer had not complied with it until he undertook to make the last payment. Prior to that time he had been sending his personal checks, or in a few instances checks of third parties. These were received by appellant, but, on account of the medium used, resulted in a delay of around three weeks in return of the cancelled notes. He only complied with the suggestion as to a Richmond draft on the occasion in question because, as he states, he desired to refinance and wanted the mortgage cancelled notes. He only complied with the suggestion as to the suggestion as to form of remittance was to expedite closing and avoid delay in the cancellation and delivery of the notes that were paid.

The statement in form 248, "If remittance other than Richmond or New York exchange, or money order was received, the cancellation and delivery of notes will be withheld for three weeks," clearly indicates that appellant was not undertaking to instruct the mortgagor as to any particular form of remittance, but, on the contrary, was only indicating the delay which would follow unless the suggested form of remittance was used.

No particular form of Richmond bank draft was suggested. The selection of the drawer bank was entirely in the hands of respondent Barringer. Is it reasonable to infer that appellant expressly or impliedly agreed to accept as absolute payment any Richmond bank draft, regardless of what bank issued same? We think not.

The case of *National Life Ins. Co. v. Goble,* 51, Neb. 5 70 N. W., 503, is somewhat similar. This case involved the question as to whether an insurance premium had been paid. Notice sent of premium due contained the following: "Please remit by bank draft, registered letter, express or post-office money order." Assured forwarded bank draft to company's agent, who mailed premium receipt to assured. The bank issuing the draft failed, and consequently the

bank draft was not paid. It was contended that the above-quoted portion of the notice amounted to a direction relative to the manner of remittance, a compliance with which constituted absolute payment. This contention was overruled by the Court, and it was held that the notice "amounted to a request at most and was not binding upon" the assured.

Respondents rely on the following language used by the Court in *Baker v. State Highway Dept.*, 166 S. C., 481, 165 S. E., 197, 201: "But respondent argues that appellant invited it to send cashier's check in payment of the license fees, and hence it is estopped now to deny that it had authority to accept such checks. If this were a controversy between individuals, respondent's contention would be meritorious; but this is an action against the state, and the contention is expressly decided against respondent by the case of *Carolina National Bank v. State of South Carolina*, 60 S. C., 465, 38 S. E., 629, 633, 85 Am. St. Rep., 865."

A careful reading of the opinion discloses that, just before using the above language, the Court had held that the highway department had no authority to accept anything but money in payment of license fees, and the effect of the foregoing language was only to state that the doctrine of estoppel, while applicable to individuals, did not apply to a part of the severeignty of the state. The Court was not undertaking to pass upon the question now presented.

As to the second question, the referee found that Mrs. Arrowsmith's attorney examined the foregoing notices and relied thereon in loaning said sum of $2,200.00. It follows from the foregoing views that she was not warranted in concluding from the examination of said notices that a Richmond draft would operate as absolute payment. We are unable to find anything in the record to support the contention that appellant is estopped as to said respondent to claim failure of payment.

It is the judgment of this Court that the judgment of the Circuit Court be, and the same is hereby, reversed, and

the case remanded to the Circuit Court for further proceedings in conformity with the conclusions herein reached.

MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.